**26SL-CC03606**

Electronically Filed - St Louis County - May 06, 2026 - 01:18 PM

**IN THE CIRCUIT COURT OF ST. LOUIS COUNTY**
**STATE OF MISSOURI**

| | | |
|---|---|---|
| CHEMAGENCY, LLC,<br><br>Plaintiff,<br><br>v.<br><br>DAVIS-FROST, Inc., a Minnesota Corporation, and LOVE & ASSOCIATES, LLC, a Texas Limited Liability Company,<br><br>Defendants,<br><br>Serve: Calvin C. Henning<br>Davis-Frost, Inc. Reg.Agent<br>304 Eastwind Drive<br>Forest, Virginia 24551-1848<br><br>Love & Assoc. Reg. Agent<br>343 Johnny Clark Rd.<br>Longview, Texas 75603 | ) | Case No.<br><br>Div.<br><br>**JURY TRIAL DEMANDED** |

## PETITION

COMES NOW ChemAgency LLC ("Plaintiff"), by and through its under-signed counsel, and, for its Petition against Davis-Frost, Inc. and Love & Associates, LLC ("Defendants"), states as follows:

1. Plaintiff ChemAgency LLC is a Missouri Limited Liability Company with its principal place of business in St. Louis County, State of Missouri.



EXHIBIT
tabbies
A

Electronically Filed - St Louis County - May 06, 2026 - 01:18 PM

2. Defendant Davis-Frost, Inc. ("Davis-Frost") is a Minnesota corporation with its principal place of business in Lynchburg, Virginia.

3. Defendant Love & Associates ("Love & Associates" or "Love") is a Texas Limited Liability Company with its principal place of business in Longview, Texas.

4. Jurisdiction and venue are proper in this Court.

5. The Agreement at issue in this Petition was prepared and executed and transacted within the State of Missouri. The conduct at issue in this case was within the State of Missouri. As such, the claims against Defendants invoke long arm jurisdiction within the State of Missouri. RSMO 506.500. T

**FACTS COMMON TO ALL COUNTS**

6. Plaintiff owns a product named RailGard 2040 which is a two-component direct-to-metal epoxy coating originally formulated in or about 2007 for application to the exterior of railcars to provide corrosion resistance to steel substrates.

7. Trinity Industries, Inc. and its affiliate, Trinity Rail (collectively, "Trinity"), are among the largest manufacturers and lessors of railcars in the United States.

8. In or about 2010, ChemAgency modified the RailGard 2040 formulation to meet Trinity's specifications, including reducing volatile organic compound ("VOC") content (the modified product referred to herein as "RailGard 2040VOC").

Electronically Filed - St Louis County - May 06, 2026 - 01:18 PM

9. Beginning in 2010, ChemAgency initiated testing of RailGard 2040VOC at Trinity according to Trinity Coating Standard CS-101, a multi-step qualification process for coatings used on Trinity railcars. Section 1 of CS-101 provides, in part, that compliance ensures only coatings that have undergone thorough testing and evaluation are approved for use in Trinity railcar facilities.

10. Following successful completion of testing, Trinity assigned RailGard 2040VOC the following part numbers: Part A 039-41862-US and Part B 039-41861-US.

11. During 2014 and 2015, Trinity purchased and applied RailGard 2040VOC to approximately 900 railcars owned or operated by Trinity Industries Leasing Company ("TILC"), confirming the product's approval for use within Trinity facilities.

12. Don Love, President of Defendant Love & Associates, LLC ("Love & Associates") and then acting as an agent of Davis-Frost acknowledged that this production run demonstrated Trinity's approval of RailGard 2040.

13. In or about September 2017, Love & Associates expressed interest in representing RailGard in the railcar market, including sales to Trinity.

14. On February 13, 2018, ChemAgency and Davis-Frost entered into a Non-Disclosure Agreement for the purpose of evaluating RailGard 2040, including its formulation and cost structure.

Electronically Filed - St Louis County - May 06, 2026 - 01:18 PM

15. In reliance on that agreement, ChemAgency provided Davis-Frost with confidential and proprietary information, including the RailGard 2040 formula, Product Data Sheet, and Material Safety Data Sheet.

16. On March 31, 2018, ChemAgency and Davis-Frost entered into a License, Royalty, and Purchase Agreement (the "Agreement"), a true and correct copy of which is attached as Exhibit A.

17. The parties understood that, as a condition of sales to Trinity Davis-Frost would be required to provide an express warranty of not less than five (5) years, and Davis-Frost agreed to assume responsibility for such warranty obligations pursuant to the Agreement.

18. In or about February 2018, Don Love recommended to Davis-Frost's principals that Davis-Frost obtain rights to RailGard from ChemAgency for use in connection with Trinity.

19. In or about April 2018, Davis-Frost modified the RailGard 2040 formulation, purportedly to improve the gloss of the coating.

20. Davis-Frost rebranded the modified product as "RailGard 9000" and marketed it as a subsequent version of RailGard 2040 to avoid Trinity's testing requirements.

21. RailGard 9000 was first applied to a limited number of railcars in or about May 2018 at Trinity's Longview, Texas facility.

Electronically Filed - St Louis County - May 06, 2026 - 01:18 PM

22. On June 18, 2018, Davis-Frost created a Product Data Sheet for Rail-Gard 9000 that was materially identical to ChemAgency's RailGard 2040 Product Data Sheet, except for changes to the product name and branding. This document was distributed to customers, including Trinity.

23. Trinity assigned RailGard 9000 the following part numbers: Part A 039-44866 and Part B 039-44865, which were included on Trinity purchase orders.

24. Trinity's purchase orders expressly required that Davis-Frost not change any aspect of the product, including its chemistry or formulation, without Trinity's prior approval.

25. After initial application and acceptance, Davis-Frost modified the Rail-Gard 9000 formulation multiple times.

26. Davis-Frost failed to disclose these formulation changes to Trinity, ChemAgency, or other customers, and actively concealed such changes by continuing to use the same product identification and documentation.

27. The modified formulations of RailGard 9000 no longer met the physical properties and performance characteristics represented in the Product Data Sheet.

28. Despite these changes, Davis-Frost did not update the Product Data Sheet or otherwise notify customers, as required by purchase orders and industry standards.

Electronically Filed - St Louis County - May 06, 2026 - 01:18 PM

29. Trinity did not revise or reassign product numbers for RailGard 9000 and continued to rely on the original approved specifications.

30. Beginning in the summer of 2018, RailGard 9000 was applied to rail-cars in production and repair operations.

31. In or about June 2019, Defendants represented to ChemAgency that RailGard 9000 had been designated as Trinity's preferred exterior coating, with anticipated monthly sales of approximately 40,000 gallons based on historical demand. Initial orders reflecting this designation were received on or about July 2, 2019.

32. Beginning in July 2019, RailGard 9000 began to fail in service, including lifting, peeling, and blistering from the steel substrate on approximately 282 rail-cars.

33. Trinity provided timely notice of these failures to Davis-Frost in or about late July 2019.

34. On August 30, 2019, Davis-Frost agreed to honor its warranty obligations arising from these failures.

35. In or about August 2019, Davis-Frost again reformulated the product to address the failures, creating "RailGard 9000 NF."

36. RailGard 9000 NF was applied to test railcars in August 2019 and was approved by Trinity in December 2019.

Electronically Filed - St Louis County - May 06, 2026 - 01:18 PM

37. Upon information and belief, RailGard 9000 NF became Trinity's preferred exterior coating beginning in or about April 2020.

38. Although Trinity invoiced Davis-Frost for damages arising from the failed product, Davis-Frost failed to pay those amounts.

39. On April 27, 2022, Trinity filed suit against Davis-Frost for failure to satisfy its warranty obligations. That action was resolved by settlement in 2023.

40. Throughout the Trinity litigation and thereafter, Davis-Frost continued to manufacture and sell RailGard 9000 and related formulations to other customers, including American Railcar Industries, Union Tank Car, and various repair facilities, for application to railcars owned by Chevron Phillips and ExxonMobil and others.

41. On May 10, 2021, Defendant Davis-Frost attempted to illegally and improperly "Terminate" the License, Royalty, and Purchase Agreement, as amended in violation and breach of the Agreement.

42. The License Agreement contains no "Termination Right."

43. Davis-Frost committed multiple breaches of the Agreement that precluded Davis-Frost from pursuing a "Buyout Option" under ¶ 8.3.

44. Davis-Frost conduct toward Plaintff, including but not limited to, the misrepresentations, concealment of material information, and undisclosed modifications to the RailGard formula(s), constitutes a breach of the implied covenant of good faith and fair dealing inherent in the Agreement and a breach of the Agreement.

Electronically Filed - St Louis County - May 06, 2026 - 01:18 PM

45. Davis-Frost attempted to take advantage of their active and ongoing concealment of their fraudulent acts to buyout ChemAgency for $35,935.90. This amount did not reflect the actual US Gallons sold.

46. The check was returned to Davis-Frost with an explanation and request for discussion regarding RailGard sales.

47. Despite repeated attempts, Davis-Frost never attempted to provide ChemAgency with any further information and refused to participate in any discussion or attempt to resolve this payment.

48. In January 2022 Davis-Frost issued a 1099 to ChemAgency and the Internal Revenue Service including an amount of $35,935.90 which Davis-Frost knew was incorrect.

49. To date Davis-Frost has never paid ChemAgency any buyout amount.

50. § 9 of the Agreement states as follows:

> Breach: If Davis-Frost breaches the term(s) of this Agreement, all ownership rights, including the right to market, manufacture and sell RailGard will immediately revert to ChemAgency. ChemAgency will have the right to (a) demand immediate return of any Confidential Information; including the formula (and any successor formula(s) (b) recover actual damages incurred by reason of such breach

Electronically Filed - St Louis County - May 06, 2026 - 01:18 PM

> including, without limitation, attorneys' fees and costs. (c) obtain injunctive relief to prevent such breach or to otherwise enforce the terms of this Agreement; and (d) to pursue any other relief available.

51. On July 7, 2021, and repeatedly afterwards, ChemAgency notified Davis-Frost that based upon the improper "Termination" attempt, ChemAgency owns all rights to the RailGard products.

52. In May 2025 ChemAgency became aware that Love & Associates had been marketing and continues to market a subsequent version of RailGard 9000, renamed L&A 1227.

53. Neither Davis-Frost nor Love & Associates to date has made any attempt to contract ChemAgency to obtain authorization to sell and product utilizing any RailGard formula including any and all subsequent formulations as defined in § 5 of the Agreement.

**COUNT I – BREACH OF CONTRACT AGAINST DAVIS-FROST**

54. Plaintiff restates paragraphs one through 53 as if fully set forth herein.

55. There existed a valid and binding contract between Plaintiff and Davis-Frost.

56. Plaintiff fulfilled its obligations under the contract.

57. Davis-Frost failed to comply with specific terms of the contract.

Electronically Filed - St Louis County - May 06, 2026 - 01:18 PM

58. As a result of breach of contract by Davis-Frost, Plaintiff has been damaged.

**COUNT II – UNJUST ENRICHMENT AGAINST LOVE**

59. Plaintiff restates paragraphs one through 58 as if fully set forth herein.

60. Love & Associates obtained property and obtained sales income of property belonging to Plaintiff.

61. Love & Associates knew the property belonged to Plaintiff.

62. Love & Associates knew of the nature of the benefit it obtained at the expense of Plaintiff and knowingly accepted it.

63. It would be inequitable and unfair to Plaintiff for Love & Associates to keep the benefit without compensating Plaintiff.

**COUNT III - FRAUDULENT MISREPRESENTATION AGAINST DAVIS-FROST AND LOVE**

64. Plaintiff restates paragraphs one through 63 as if fully set forth herein.

65. Defendants made representations and statements of facts to Plaintiff.

66. Defendants' representations were false.

67. Defendants' representations were material to the matter.

68. Defendants knew the statements were false or were ignorant of the truth.

Electronically Filed - St Louis County - May 06, 2026 - 01:18 PM

69. Defendants intended for Plaintiff to rely and act on the representations.

70. Plaintiff did not know the statements were false.

71. Plaintiff relied on the representations as being true.

72. Plaintiff had a right to rely on the representations.

73. As result of Defendants' conduct, Plaintiff has been damaged.

**WHEREFORE** Plaintiff prays this Honorable Court find in favor of Plaintiff and against both Defendants in an amount exceeding $25,000.00, for prejudgment interest, attorney's fees, costs and other relief as is just and adequate.

Respectfully submitted,

/s/ J. Christopher Wehrle
J. Christopher Wehrle, 45592
**WEHRLE LAW LLC**
2601 S. Hanley Rd.
St. Louis, Missouri 63144
(314) 272-4113
(314) 272-4107 Facsimile
chris@wehrlelaw.com

Electronically Filed - St Louis County - May 06, 2026 - 01:18 PM

Exhibit A

**ChemAgency LLC**
**Davis - Frost, Inc.**

**License, Royalty and Purchase Agreement**

***March [22], 2018***

This Agreement is entered into between **ChemAgency LLC**, a Missouri Limited Liability Company ("ChemAgency") 18 Berkley Lane, St. Louis, MO 63124 and **Davis - Frost Inc.**, a Minnesota Corporation, (**"Davis – Frost"**) 3416 Candlers Mountain Rd, Lynchburg, VA 24502 entered into 21 day of March 2018 (together, the "Parties").

**RECITATIONS:**

WHEREAS ChemAgency supported the development, testing and sold industrial coatings using the trade name "RailGard", specifically products known by the trade name(s) Railgard 2040 and Railgard 2040 VOC (together, the "RailGard Products") under a Manufacturer's Representative Agreement entered into in February 2006 with a St. Louis based manufacturer, US Coatings LLC ("US Coatings");

WHEREAS, ChemAgency, having exercised its rights under the US Coatings Manufacturer's Representative Agreement, has full ownership and rights to the RailGard name, products, supporting documentation, specifications and approvals.

WHEREAS, The RailGard Products have been approved for use by major railcar manufacturers; American Railcar Industries ("ARI") and Trinity Industries, Inc. ("Trinity"), with both manufacturers giving RailGard Products a part number on their respective vendor procurement systems;

WHEREAS, Love & Associates, a Manufacturer's Representation firm located in Longview, Texas, having as its principal, Don M Love II (together, "Love"), known to both ChemAgency and Davis – Frost, has entered into an arrangement to sell RailGard products to the railcar markets;.

WHEREAS, Davis-Frost has sold, and will continue to sell, its *Water Tuff* waterborne coatings for use on railcar exteriors, it now intends to market and sell RailGard for the purposes of increasing their overall sales volume and profits, as well as to increase sales of existing waterborne and urethane / acrylic based paint systems to be used on the exterior of railcars;

WHEREAS, Davis-Frost, ChemAgency, Love and Associates, and Diamond Vogel, have entered into a Non-Disclosure Agreement, dated February 13, 2018 (the "NDA"), for the purpose of Davis –Frost's evaluation of formulas and manufacturing process of the Railgard Products; and

Electronically Filed - St Louis County - May 06, 2026 - 01:18 PM

WHEREAS, ChemAgency shall grant Davis – Frost, upon execution of this agreement, a license to manufacture, market and sell Railgard products, as well as transferring ownership of the RailGard Products in their entirety, including all supporting literature, specifications and approvals, subject to the provisions of this Agreement.

## THEREFORE, IT IS AGREED AS FOLLOWS:

1. **Transaction:** Subject to the terms herein, ChemAgency shall grant Davis-Frost an immediate license to manufacture, market and sell the RailGard Products. Further, subject to the terms of this Agreement, ChemAgency shall transfer ownership of the RailGard Products o Davis-Frost, including but not limited to: the rights to, the Railgard Products' formulas, all technical and marketing information, marketing, manufacture and sale of the product.

2. **Representations of the Parties:**

2.1 **ChemAgency:**

ChemAgency represents that the formulas and other materials provided by ChemAgency under the NDA regarding the Railgard Products are complete and correct as have been used in manufacturing products and samples used to obtain product approvals from ARI and Trinity.

ChemAgency represents that it has taken all actions necessary to confirm its ownership of formulas and associated materials regarding the RailGard Products.

ChemAgency and its Principal, J. Michael Wehrle, has due authority to execute the transactions as described in this Agreement.

2.2 **Davis – Frost:**

Davis – Frost represents that it has due authority to execute the transactions described in this Agreement.

Davis – Frost represents its current intention to continue sales of coating materials, including the Railgard Products, to the railcar markets, with the result that ChemAgency has the reasonable opportunity to earn Royalties, as described in Section 8.2 of this Agreement, below.

3. **Covenants of the Parties:**

3.1 **ChemAgency:**

ChemAgency shall supply the formula(s) for RailGard including RailGard 2040 VOC as well as all supporting literature.

Electronically Filed - St Louis County - May 06, 2026 - 01:18 PM

ChemAgency shall use its best efforts to assist Davis - Frost and Love and in the marketing, manufacture and sale of RailGard (and any other Davis - Frost product(s) intended for use in the Railcar market). This support is to include, but not limited to, any and all field reports, test data, specifications, approvals, and other associated and relevant marketing materials in ChemAgency's possession.

ChemAgency, upon request, shall support Davis-Frost in the marketing of their waterborne and urethane systems for use on the exterior of railcars.

3.2 <u>**Davis - Frost:**</u>

Davis - Frost shall use best efforts to market, manufacture and sell RailGard Product(s) to the RailCar industry.

Davis – Frost shall have the ability to outsource the manufacturing of the Railgard Products to a third party toll manufacturer. In such case, Davis – Frost shall notify ChemAgency of such an agreement and shall be bound by all provisions of this Agreement, including Breach and Confidentiality provisions, below.

Davis - Frost shall employ or contract (through written or verbal agreement) Love to sell and provide technical service for the RailGard Products to the RailCar industry.

Davis - Frost shall assume from the date of this contract all financial responsibility for the marketing, manufacture, and sale of the RailGard Products. Such financial responsibility shall include (but not limited to) warranty claims made with respect to the Railgard Products.

Davis - Frost shall provide to ChemAgency, in a timely manner via email, copies of all purchase orders received for RailGard products.

4. **Trade Name –** Davis – Frost shall have the right to use Railgard as a Davis – Frost trade name, as customary and consistent with Davis – Frost industrial coatings product offerings. Davis-Frost shall also have the right to use the "RailGard" or "RailGrip" brand name on its other non-epoxy based coatings systems intended for use on the exterior of railcars. All provisions of this Agreement applicable to the Railgard Products shall continue to apply to the named Davis – Frost products.

5. **Subsequent Formulations** – Davis–Frost shall have the ability to modify and/or change the formulations of the Railgard Products. However, any such modifications which do not change the application and/or use of the Railgard Products for their use in the Railcar Market(s) shall not affect the obligations of Davis – Frost under this Agreement. Davis-Frost shall, for the duration of this agreement, continue to use the RailGard brand name in addition to the Davis – Frost name on all subsequent formulations of epoxy based coating systems for use on the exterior of railcars. Davis-Frost may assign different product numbers to subsequent formulations.

Electronically Filed - St Louis County - May 06, 2026 - 01:18 PM

6. **General Policy:** ChemAgency and Davis - Frost acknowledge by the execution of this Agreement that they have read and understand said Agreement and agree to be bound by and to comply with its terms and conditions.

7. **Term Amendments:** This Agreement shall be effective as of the date of execution and will remain in effect until completion of all transactions and terms contained herein. This Agreement shall not be amended or otherwise terminated without the written consent of the Parties.

8. **Compensation:**

8.1 **Capital Reduction Payment:**
Davis - Frost shall pay as a Capital Reduction Payment the amount of $20,000 upon execution of this agreement, then $10,000 monthly for a period of five (5) months. The subsequent payments are due on the 15th day of each subsequent month.
The capital reduction payment amount of $10,000 will be paid for an additional six (6) months upon the achievement of one or both of the following during the initial six month period:

(a) A purchase order for RailGard 2040 or RailGard 2040 VOC received by Davis -Frost from any customer for use in the Railcar industry.

(b) Assignment and/or specification of RailGard 2040 or RailGard 2040 VOC to a customer file, build sheet or track schedule, by any customer for use in the Railcar industry.

If, during the Capital Reduction Payment period, the actual royalty earned, calculated as per Section 8.2, below, exceeds the monthly Capital Reduction Payment, the monthly royalty will be paid instead of the Capital Reduction Payment.

8.2 **Royalty:**

Davis-Frost shall pay to ChemAgency a monthly royalty in the amount of $1.50 per US gallon sold during years one though three following the execution of this Agreement, with such payment increasing to $1.75 per US gallon sold during years four through seven following the execution of this Agreement, such amounts applicable to RailGard, and/or any successor product(s) sold.

Payment of the Royalties described in this Section shall be made to ChemAgency by wire transfer or other method requested by ChemAgency on the 5th day of the month fol lowing receipt of payment from he customer.

Unless otherwise agreed, ChemAgency shall receive no compensation from the sale of Davis-Frost's waterborne and/ or acrylic / urethane products

Electronically Filed - St Louis County - May 06, 2026 - 01:18 PM

8.3 **Buyout Option:**

After the third year following the execution of this Agreement, Davis-Frost, at their sole discretion, may buyout the remainder of the Royalty as described in this agreement for a single payment equal to five (5) times the amount of royalties paid to ChemAgency as described above, during the third year following the execution of this Agreement.

9. **Breach:** If Davis-Frost breaches the term(s) of this Agreement, all ownership rights, including the right to market, manufacture and sell RailGard will immediately revert to ChemAgency. ChemAgency will have the right to (a) demand the immediate return of any Confidential Information; including the formula (and any successor formula(s) (b) recover actual damages incurred by reason of such breach, including, without limitation, attorneys fees and costs. (c) obtain injunctive relief to prevent such breach or to otherwise enforce the terms of this Agreement; and (d) to pursue any other remedy available.

10. **Hold Harmless:** ChemAgency shall not represent or imply to others that he is an employee, agent or legal representative of obligation or responsibility expressed or implied on behalf of the name of Davis - Frost, and or its contract manufacturer, or purport to commit or bind them in any manner. Davis - Frost agrees to hold ChemAgency harmless from any claims, liability or cost arising out of or connected with injuries to persons or property caused by Davis - Frost, agents or employees.

11. **Confidential Information:** ChemAgency agrees to hold in confidence and not to disclose to any person for any reason or at any time, any proprietary secret or confidential information relating to Davis-Frost's marketing activities, processes, products, machinery, apparatus, or trade secrets or any other confidential information given to ChemAgency by Davis - Frost.

12. **Assignments:** this Agreement is not assignable or transferable without the prior written consent of the Parties.

13. **Construction:** This contract shall represent the entire Agreement between the Parties.

14. **Restrictions:** ChemAgency, in addition, to the above agrees as follows:

a) No items will be represented or offers for also directly competitive to RailGard, Davis-Frost or its contracted manufacturer.

b) No representations or warranties other than those made by Davis-Frost, or its contracted manufacturer will be made.

c) No accounts will be collected without specific authorization of Davis-Frost.

d) No employment or representation will be accepted by ChemAgency (or its principal J. Michael Wehrle) with a competitor of Davis-Frost, or its contracted manufacturer will be during the period of this Agreement.

Electronically Filed - St Louis County - May 06, 2026 - 01:18 PM

15. **Miscellaneous Undertakings:**

15.1 **Entire Contract.** This Agreement contains the entire understanding of the parties and supersedes previous verbal and written agreements between the parties with respect to the matters set forth herein.

15.2 **Notices.** All notices or other documents under this Agreement shall be in writing and delivered personally, electronically or by courier addressed to ChemAgency or Davis-Frost as may the case at its last physical and/or email known addresses.

15.3 **Non-waiver.** No delay or failure by either party to exercise any right under this Agreement, and no partial or single exercise of that right, shall constitute a waiver of that or any other right, unless otherwise expressly provided herein.

15.4 **Headings.** Headings in this Agreement are for convenience only and shall not be used to interpret or construe its provisions.

15.5 **Counterparts.** This Agreement may be executed in two or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

15.6 **Binding Effect.** The provisions of this Agreement shall be binding upon and inure to the legal benefit of each of the Parties and their respective executor, administrators legal representatives, successors and assigns.

15.7 **Applicable Law.** This Agreement shall be governed by the laws of the State of Missouri, without regard to choice of law principles.

15.8 **Accounting and Verification.** ChemAgency shall have the ability to, and Davis-Frost will cooperate with, ChemAgency's retention of accountants and/or auditors to review accounting and other records of RailGard production. ChemAgency shall provide fifteen (15) days notice of its intent to review Davis-Frost's records and any such review will be conducted during normal business hours. The costs of retaining outside accountants shall be ChemAgency's obligation.

*[The remainder of this page is blank.]*

Electronically Filed - St Louis County - May 06, 2026 - 01:18 PM

IN WITNESS THEREOF: the parties have executed this agreement as of the date first above written.

**CHEMAGENCY LLC**

J. Michael Wehrle
Principal and Managing Member

**DAVIS - FROST INC.**

Cal Henning
CEO